**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HOLISTIC SOLUTIONS LLC and SUZAN NICKELSON,<br><br>Petitioners,<br><br>v.<br><br>EASTBOUND COLLECTIVE LLC, PATRIK JONSSON, and ROBERT SCIARRONE,<br><br>Respondents. | Civil Action No.: |

# BRIEF IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION OF PETITION TO CONFIRM ARBITRATION AWARD

**A.Y. STRAUSS LLC**
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel: 973-582-7462
*Attorneys for Petitioner Holistic Solutions LLC*

**MONTGOMERY, McCRACKEN, WALKER & RHOADS LLP**
1735 Market Street
Philadelphia, PA 19103-7505
Tel: 215-772-7473
*Attorneys for Petitioner Suzan Nickelson*

Robert J. Donaher, Esq.
Lathrop B. Nelson, III, Esq.

*Of Counsel*

Robert J. Donaher, Esq.
Alexa E. Sjolund, Esq.

*On the Brief*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii, iii, iv

SUMMARY STATEMENT OF THE MATTER .......... 1,2,3,4,5,6

A. The Arbitration Agreement .......... 6

B. The Claims and Issues in Dispute .......... 7

C. The Arbitration Decision and Award .......... 9

LEGAL ARGUMENT .......... 14

I. PETITIONERS ARE ENTITLED TO CONFIRMATION OF THE ARBITRATION AWARD UNDER THE FEDERAL ARBITRATION ACT, 9 U.S.C. § 9 .......... 14

A. Respondents Expressly Waived Any Legal Right to Challenge the Award .......... 14

B. Any Challenge to the Award Would Now Be Untimely

C. .......... 15

D. There are No Cognizable Legal Grounds to Vacate the Award .......... 17

II. THE FEDERAL CRIMINAL PROHIBITION OF CANNABIS SALES DOES NOT GIVE RISE TO AN ILLEGALITY DEFENSE .......... 18

A. The Contractual Provisions at Issue Are Severable from the Balance of the Holistic OA Under Controlling Federal Law .......... 19

B. Controlling Precedent Precludes an Illegality Objection or Defense .......... 22

C. A Blanket Prohibition Against the Enforcement of Cannabis Industry Contracts in Federal Court Is Irrational and Legally Untenable .......... 24

D. The Objectives of the Federal Arbitration Act Override Any Illegality Objection .......... 25

III. PETITIONERS ARE ENTITLED TO CONFIRMATION OF THE AWARD UNDER NEW JERSEY STATE LAW, N.J.S.A. 2A:23B-22 .......... 26

CONCLUSION .......... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apical Biotek, LLC v. Maitri Holdings, LLC*,
No. 25-1396, 2026 WL 177927 (3d Cir. Jan. 22, 2026) .......... 18, 22

*Bartch v. Bartch*,
721 F. Supp. 3d 380 (D. Md. 2024) .......... 24

*Beckley Oncology Assocs., Inc. v. Abumasmah*,
993 F.3d 261 (4th Cir. 2021) .......... 15

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) .......... 19, 20, 22, 25

*City of Atl. City v. Atl. City Firefighters Local 198, IAFF*,
234 N.J. Super. 596 (N.J. Super. Ch. Div. 1989) .......... 27

*Cont'l Wall Paper Co. v. Louis Voight & Sons Co.*,
212 U.S. 227 (1909) .......... 20

*Curaleaf Holdings, Inc. v. New Jersey Cannabis Regul. Comm'n*,
No. CV 25-16397 (MAS) (RLS), 2026 WL 1481529 (D.N.J. May 27, 2026) .......... 23

*Erie R. Co. v. Tompkins*,
304 U.S. 64 (1938) .......... 25

*Florasynth, Inc. v. Pickholz*,
750 F.2d 171 (2d Cir. 1984) .......... 17

*France v. Bernstein*,
43 F.4th 367 (3d Cir. 2022) .......... 25

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
552 U.S. 576 (2008) .......... 15

*Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*,
867 F.3d 692 (6th Cir. 2017) .......... 21, 22

*Jeereddi A. Prasad, M.D., Inc., Ret. Plan Tr. Profit Sharing Plan v. Invs. Assocs., Inc.*,
82 F. Supp. 2d 365 (D.N.J. 2000) .......... 16

*Kaiser Steel Corp. v. Mullins*,
455 U.S. 72 (1982) .......... 20, 21, 22

*Kelly v. Kosuga*,
358 U.S. 516 (1959).......................................................................................20, 21, 22

*MACTEC, Inc. v. Gorelick*,
427 F.3d 821 (10th Cir. 2005) .....................................................................................15

*McMullen v. Hoffman*,
174 U.S. 639 (1899).............................................................................................20, 22

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983).......................................................................................................25

*Rappaport v. Pasternak*,
260 N.J. 230 (N.J. 2025), *reconsideration denied*, 260 N.J. 356 (N.J. 2025) ..........................26

*Singer v. State*,
95 N.J. 487 (N.J. 1984)...............................................................................................13

*Sola Elec. Co. v. Jefferson Elec. Co.*,
317 U.S. 173 (1942)....................................................................................................20

*Tabas v. Tabas*,
47 F.3d 1280 (3d Cir. 1995) ........................................................................................15

*Teamsters Loc. 177 v. United Parcel Serv.*,
966 F.3d 245 (3d Cir. 2020) ........................................................................................16

*Teamsters-Emp. Loc. No. 945 Pension Fund v. Acme Sanitation Corp.*,
963 F. Supp. 340 (D.N.J. 1997)...................................................................................15

*Terra Nova Trading Inc. v. Cashew Indus. W. Afr.*,
732 F. Supp. 3d 363 (D.N.J. 2024)...............................................................................15

*United States v. Sirois*,
119 F.4th 143 (1st Cir. 2024).......................................................................................19

*United States v. Stacy*,
156 F.4th 994 (10th Cir. 2025) ....................................................................................19

**Statutes**

9 U.S.C. § 10...........................................................................................................14, 17

9 U.S.C. § 11...........................................................................................................14, 17

9 U.S.C. § 13...............................................................................................................1, 6

Act21, 26, 27

Controlled Substances Act, 21 U.S.C. § 812 .......... 18

CSA .......... 19, 22, 23, 24

FAA .......... *passim*

FAA Section 12, 9 U.S.C. § 12 .......... 16

Federal Arbitration Act .......... 25

Federal Arbitration Act Section 9, 9 U.S.C. § 9 .......... 1, 6, 14, 15

Jake Honig Compassionate Use Medical Cannabis Act, N.J.S.A. 24:6I-1 *et seq.* .......... 9

N.J.S.A. 2A:23B-22 .......... 26

N.J.S.A. 2A:23B-23(d) .......... 27

N.J.S.A. 2A:23B-25(a) .......... 27

N.J.S.A. 2A:23B-25(b) and (c) .......... 27

New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, N.J.S.A. 24:6I-31 *et seq.* .......... 9

New Jersey Marijuana Laws, N.J.S.A. 24:6I-7(d)(1) .......... 9

New Jersey Revised Uniform Arbitration Act .......... 26

NEW JERSEY STATE LAW, N.J.S.A. 2A:23B-22 .......... 26

Sherman Act .......... 24

Sherman Antitrust Act .......... 25

Sherman Antitrust Act, 15 U.S.C. §§ 1-7 .......... 21

## SUMMARY STATEMENT OF THE MATTER

Petitioners Holistic Solutions LLC ("Holistic" or the "Company") and Suzan Nickelson ("Ms. Nickelson") (hereinafter "Petitioners") bring this action pursuant to Section 9 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 9, to confirm a Final Judgment and Award ("Award") issued on April 16, 2026, against Respondents Eastbound Collective LLC ("Eastbound"), Patrik Jonsson ("Jonsson") and Robert Sciarrone ("Sciarrone") (hereinafter "Respondents"), and to enter judgment thereon pursuant to 9 U.S.C. § 13. The Award to be confirmed arises from a Judicial Arbitration and Mediation Services ("JAMS") Arbitration (the "Arbitration") encompassing a dispute among the parties concerning their rights and obligations under a contractual agreement, the Second Amended and Restated Operating Agreement for Holistic Solutions LLC (the "Holistic OA"), governing the business affairs of Holistic. The Holistic OA contains a binding agreement to arbitrate. The parties participated in the Arbitration voluntarily and in accordance with that binding agreement. (Affidavit of Robert J. Donaher ("Donaher Aff."), Exhibit A, Section 14.12(a), Exhibit H, p. 3)

Holistic is a minority-owned marijuana dispensary engaged in the retail sale of marijuana products for medicinal and recreational uses. It is the first black, female owned business to secure a cannabis license in New Jersey. Ms. Nickelson is the black female owner of Holistic who achieved that historical feat. She is also Holistic's founder, majority owner and managing member. (Ex. H, pp. 4-5) Ms. Nickelson is widely considered throughout the New Jersey cannabis industry as a pioneering leader and entrepreneur. Ms. Nickelson and Holistic bring this confirmation action of necessity. After availing themselves of the JAMS arbitration process to assert affirmative monetary claims against Holistic and Ms. Nickelson personally in a scorched earth manner designed to bankrupt them both, Respondents refused to honor the award when they lost. Respondents have refused specifically to pay monetary awards in favor of Holistic and Ms.

Nickelson respectively of $1,377,277.55 and $627,650.94 totaling $2,004,928.49. They have also failed to acknowledge their removal from Holistic, thereby complicating the Company's licensure status before the CRC and preventing it from seeking and obtaining new investors and investment capital, further jeopardizing the Company's future. (Donaher Aff., 21-23)

Respondents are closely associated with Curaleaf, one of the largest cannabis companies in the world with annual revenues well in excess of one billion dollars and annual profits in the hundreds of millions of dollars. Respondent Sciarrone is the son-in-law of Curaleaf's founder and long-time CEO Boris Jordan. He is also a Curaleaf executive, responsible for Curaleaf's operations in the Northeast region of the United States. (Ex. H, pp. 7-8) Sciarrone's wife, Eastbound principal Marina Sciarrone, is Boris Jordan's daughter, and a Curaleaf marketing executive in her own right. (*Id.*) Respondent Jonsson is Curaleaf's former head of its Northeastern United States region. (Ex. H, p. 6) Since his departure from Curaleaf, Jonsson has operated and managed minority or social equity owned cannabis dispensaries in Connecticut in coordination with Curaleaf, in addition to his involvement with Eastbound's investment in Holistic. (*Id.*)

Respondent Jonsson sought out Ms. Nickelson and proposed a business partnership with her and Holistic on the false pretense that he was Eastbound's sole owner. Jonsson also represented to Ms. Nickelson and Holistic that Eastbound's business model was a product of his desire to help minority and social equity owned cannabis dispensaries get off the ground and thrive by assisting them in securing capital investment funding and providing operational and management expertise. (Ex. H, pp. 11-12) With that understanding, Holistic and Eastbound entered into an agreement on September 16, 2022, for Eastbound to acquire a 35% interest in Holistic with an option to purchase an additional 16% interest and majority membership in two years. (Ex. H, pp. 12-15) Unbeknownst to Holistic, almost immediately thereafter, Jonsson and Sciarrone hatched a plan for

the transfer of 70% of Eastbound's 35% interest in Holistic to a limited liability company, Cliffside I LLC ("Cliffside"), owned by Sciarrone and his wife Marina. (Ex. H, pp. 20-22) The plan was finalized on December 8, 2022, with the execution of Eastbound's Operating Agreement. (*Id.*) The surreptitious transfer placed Holistic's dispensary license in jeopardy by unlawfully failing to disclose the transaction to the New Jersey Cannabis Regulatory Commission ("CRC") and to obtain the agency's approval. (Ex. H, pp. 64, 20-22, 51-56)

Respondents thereafter concealed the transfer from both the CRC and Holistic for well over a year. The concealment entailed Jonsson's deception in his dealings with CRC investigators inquiring into both the ownership structure of Eastbound and the source of its funding for the $1.7 million purchase price for its investment in Holistic. The non-disclosure and concealment violated statutory and regulatory ownership approval and transparency requirements carrying a minimum two-year license suspension and possible license revocation. (Ex. H, pp. 24-30, 38-42, 60-65) The non-disclosure of the transaction also constituted a breach of Eastbound's contractual obligation to seek and obtain the approval of Holistic's managing member, Ms. Nickelson, for any transfer of any portion of its ownership interest in Holistic. (Ex. H, pp. 56-62)

Eastbound was forced to disclose the unlawful transfer to Holistic well over a year after it occurred in connection with a January 2024 license renewal application before the CRC. (Ex. H, pp. 38-41) On February 16, 2024, invoking the expulsion provisions of the Holistic OA and supported by a unanimous vote of the Company's other members, Ms. Nickelson, as managing member, removed Eastbound from Holistic, deeming its interest forfeited without consideration or compensation for having created a "Regulatory Problem" through its legal and regulatory violations. (Ex. H, pp. 42-44) Through newly retained counsel from the law firm of Sills Cummis & Gross, P.C. ("Sills Cummis"), Eastbound vehemently protested, threatened legal action, and

lodged baseless accusations of financial improprieties against Ms. Nickelson and the Company. (Ex. H, pp. 42-43) Despite a total lack of evidence, the latter accusations, which initially included ongoing and erroneous references to Ms. Nickelson's having used Eastbound investment monies to purchase a Maserati, would continue unabated throughout the Arbitration proceeding.

In challenging its removal, Eastbound's regulatory counsel from Sills Cummis also aggressively engaged the CRC, urging the agency to deny Holistic's February 2024 amended license renewal application that appropriately omitted Eastbound from Holistic's reported ownership structure. (Ex. H, pp. 43-45) Before submitting the amended licensure application, Holistic had notified the CRC of the occurrence and legal grounds for Eastbound's removal in a sound and rational manner. By way of contrast, in advocating for the denial of Holistic's amended application, Eastbound's legal counsel argued to the CRC that his client's removal was part of a fraudulent scheme, ignoring the applicable laws and regulations and his client's corresponding legal violations. Counsel further advised the CRC that Eastbound's removal and the forfeiture of its interest in Holistic would be legally invalidated in an impending arbitration Eastbound planned to initiate. (*Id.*)

Regulatory counsel for the Petitioners, Jennifer Cabrera, responded to those false allegations at the CRC's request, refuting Eastbound's assertions and encouraging the agency to investigate Respondents' unlawful conduct. (*Id.*) In March 2025, after obtaining disclosures from Respondents that would have been required in connection with the license renewal application as a result of the transfer to Cliffside had Eastbound not been removed, the CRC advised the parties that it would take no regulatory or punitive action against Eastbound or its members until the outcome of the arbitration. (Ex. H, pp. 44-45) It was Petitioner Holistic that initiated the nearly two-year Arbitration by filing its Request for Arbitration with JAMS on July 23, 2024. (Ex. H, p.

1; Ex. B) The Arbitration was presided over by the Honorable Stephen M. Orlofsky, U.S.D.J., Ret. ("Judge Orlofsky"), a former United States District Court Judge and current Partner in the Princeton, New Jersey office of Blank Rome LLP. Judge Orlofsky was mutually selected by the parties to the Arbitration. He served as the sole arbitrator in this matter under the JAMS Comprehensive Arbitration Rules and Procedures (the "JAMS Rules").

Judge Orlofsky issued the Award on April 16, 2026. (Ex. G) The Award was supported by a companion 107-page Memorandum Opinion setting forth comprehensively and in detail the procedural history of the Arbitration, the claims and counterclaims of the parties, the legal issues encompassed in the dispute, his comprehensive legal and factual findings and his legal reasoning in ruling in favor of the Petitioners. (Exs. G and H) The Award and Memorandum Opinion were served on counsel for all parties via electronic mail. (Ex. I)

Judge Orlofsky entered a declaratory judgment in favor of Petitioner Holistic and against Respondents Eastbound, Jonsson and Sciarrone for breach of the Holistic OA. The declaratory judgment confirmed that (a) Eastbound and Jonsson's transfer of 70% of its membership interest and concomitant contractual rights in Holistic to Cliffside and its principals Robert and Marina Sciarrone is null and void; (b) Holistic's removal of Eastbound as a member was lawful and proper and Eastbound is not a member of Holistic; and (c) Eastbound has forfeited, without the right to consideration or compensation, all membership interests and rights of any kind in Holistic. (Exs. G and H)

In accordance with the Holistic OA, Judge Orlofsky also issued the noted monetary awards against the Respondents and in favor of Holistic and its managing member Ms. Nickelson. The monetary awards compensated the prevailing parties for their reasonable attorneys' fees and costs based on comprehensive applications by the undersigned. (Exs. G and H at pp. 91-106) Judge

Orlofsky further awarded Petitioners post-judgment interest at the annual rate of 6.5% until paid in full. (Exs. G and H at p. 106) Respondent Eastbound has refused to pay any part of the $1,377,277.55 judgment in favor of Holistic and the $627,650.94 judgment in favor of Ms. Nickelson. (Donaher Aff., par. 21-23)

Respondents' counsel from Sills Cummis were largely non-responsive to all post-award communications. (*Id.*) After months of attempting to engage Respondents' counsel on their clients' intentions with respect to the satisfaction of the Award, the undersigned learned on July 21, 2026, that Sills Cummis no longer represented Respondents. (Donaher Aff., par. 21) Sills Cummis further advised that the firm was unaware of whether Respondents had retained new counsel. (*Id.*) After learning that Respondents may be without post-award legal counsel, the undersigned contacted Respondents Jonsson and Sciarrone individually via electronic mail to inquire whether they were represented by new counsel on August 3, 2026, and again on August 11, 2026. (Donaher Aff., par. 22) Neither responded to either communication. (*Id.*)

Petitioners seek an order from this Court under Section 9 of the FAA, 9 U.S.C. § 9, confirming the Award and entering judgment thereon pursuant to 9 U.S.C. § 13. Section 14.12(b) of the Holistic OA provides that the arbitrator's decision is "final, binding, conclusive, and non-appealable." (Ex. A, p. 41) The Award has not been vacated, modified, or corrected; confirmation is therefore mandatory. *See* 9 U.S.C. § 9. In conjunction with this Petition, therefore, Petitioners have filed a motion for summary adjudication, or otherwise for expedited review, confirming the award and entering judgment thereon.

**A. The Arbitration Agreement**

The Award constitutes a binding adjudication under the Holistic OA executed by the parties on September 16, 2022. (Ex. A, Section 14.12(a), Ex. H, p. 3) The dispute resolution framework

agreed to by the parties is set forth in Section 14 of the Holistic OA. (Ex. A) Section 14.12(a) of the Holistic OA provides that "any dispute or controversy between any of the parties involving the interpretation, construction or application of any terms of this Agreement, or transactions under it, must be solely and finally settled by arbitration in accordance with the commercial rules then in effect of the Judicial Arbitration and Mediation Services." (*Id.* at p. 41) Section 14.12(b) provides that the arbitrator's decision "must be final, binding, conclusive, and non-appealable." (*Id.*) Section 14.12(d)(vi) of the Holistic OA expressly authorizes the filing of confirmation proceedings, providing "[a] [j]udgment on the arbitration award may be entered in any court having jurisdiction over the parties or their assets." (*Id.* at 42)

The parties agreed to the appointment of a single arbitrator, Judge Orlofsky, a preeminent former federal jurist with varied and extensive experience in financially consequential complex litigation and alternative dispute resolution matters. In addition to his distinguished service as a United States District Court Judge for the District of New Jersey, Judge Orlofsky sat on a 13-member Judicial Assessment Team that traveled to Iraq to assist the Coalition Provisional Authority in reconstructing the Iraqi court system. He was appointed by the chair of the ABA Litigation Section to serve as a member of its Ethical Standards for Mediation Task Force. Judge Orlofsky currently serves as a Partner of Blank Rome LLP's Princeton Business Litigation group.

**B. The Claims and Issues in Dispute**

Petitioner Holistic's claims against the Respondents arose from Eastbound's unlawful and unauthorized transfer of 70% of its former interest in Holistic to Cliffside in violation of state and federal law and the specific prohibitions of Section 9.01 of the Holistic OA. Holistic brought claims for damages and declaratory and other appropriate relief against Respondents for breach of contract, including specifically breach of Sections 10.02, 4.04 and 9.01 of the Holistic OA, along

with claims for breach of fiduciary duty, common law fraud, fraudulent scheme, fraudulent conspiracy and fraudulent inducement. (Ex. H, p. 46; Ex. B; Ex. E) Respondent Eastbound's counterclaims against Holistic arose from Holistic's February 16, 2024, removal of Eastbound from Holistic under Section 10.02 of the Holistic OA, and the forfeiture of its interest in Holistic following the disclosure of the unlawful transfer in connection with Holistic's January 2024 Alternative Treatment Center ("ATC") renewal and recreational sales license expansion application. Eastbound's Counterclaims included causes of action for breach of contract, minority member oppression and fraud, as well as a demand for an accounting. (Ex. H, pp. 46-47) Eastbound challenged its removal and forfeiture as lacking in sufficient legal grounds under the applicable provisions of the Holistic OA. Eastbound's principal breach of contract and oppression counterclaims, including specifically alleged breaches of financial record inspection rights and budget preparation obligations, were largely unrelated to Eastbound's removal from Holistic and forfeiture of its interest in Holistic. (*Id.*)

The primary matters in controversy in this Arbitration were whether Holistic acted within its legal and contractual rights in removing Eastbound and deeming its interest in Holistic to have been forfeited. The principal legal questions presented involved matters of regulatory legality and corporate governance: (1) whether Eastbound, through its undisclosed and admittedly concealed transfer of 70% of its 35% interest in Holistic to Cliffside created a "Regulatory Problem" it failed to timely cure in violation of Sections 4.02(i) and 10.02 of the Holistic OA; and (2) whether Respondents' failure to disclose and obtain the written consent of Ms. Nickelson for the transfer violated Section 9.01(a) of the Holistic OA, rendered the transfer "null and void" under Article IX, Section 9.01(c).

### C. The Arbitration Decision and Award

On April 16, 2026, Judge Orlofsky issued the Award and companion 107-page Memorandum Opinion setting forth the legal and factual bases for the Award. (Exs. G and H) Judge Orlofsky determined that Respondents violated New Jersey Marijuana Laws, N.J.S.A. 24:6I-7(d)(1), in failing to disclose Eastbound's transfer of 70% of its interest in Holistic to Cliffside to the CRC. (Ex. H, pp. 51-54) He further determined that through the non-disclosure and prolonged concealment of the transfer, Respondents violated multiple provisions of the Holistic OA, including the covenant against creating a Regulatory Problem for the Company, the obligation to advise the other Members of such Regulatory Problem, and the obligation to timely cure such Regulatory Problem within ninety (90) days under Section 10.02(c). (Ex. H, pp. 56-65)

Judge Orlofsky further found that Respondents breached the Holistic OA by failing to obtain approval for the transfer from the Company's managing member, Ms. Nickelson, in violation of Section 9.01 of the Holistic OA. In accordance with the unambiguous language of the provision, Judge Orlofsky determined that the violation rendered the transfer null and void. (Ex. H, pp. 56-58) Demonstrating the gravity of the Regulatory Problem Respondents created for Holistic, Judge Orlofsky found that Respondents' non-disclosure and concealment of the transfer violated the fundamental laws governing the sale of marijuana in New Jersey and various regulatory provisions implementing those laws, including those arising under the Jake Honig Compassionate Use Medical Cannabis Act, N.J.S.A. 24:6I-1 *et seq.*, and the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, N.J.S.A. 24:6I-31 *et seq*. Judge Orlofsky found that as a result of their various legal and regulatory violations of state transparency and ownership restriction requirements, Respondents are statutorily ineligible to hold

a license or engage in the sale of marijuana in New Jersey for a duration to be determined by the CRC but for no less than two (2) years. (Ex. H, pp. 51-62)

Judge Orlofsky found that by not only failing to disclose the Eastbound transfer to Cliffside but also concealing the transaction for more than fourteen (14) months, Respondents had placed Holistic's license in jeopardy. (Ex. H, p. 64) He found that had Holistic not taken appropriate action to remove Eastbound, Respondents' unlawful conduct could have resulted in the revocation of Holistic's license. (*Id.*) Judge Orlofsky accordingly issued declaratory relief, affirming Holistic's right to remove Eastbound as a member of the Company and the legality of the enforcement of the forfeiture of Eastbound's interest in Holistic without consideration or compensation. (Ex. H, pp. 65-69) Finding Respondents' case to be wanting, Judge Orlofsky rejected out of hand what amounted to an untenable ignorance of the law defense. Judge Orlofsky made express, adverse credibility findings against Respondents' principal witnesses. He found that Jonsson "lacked credibility when explaining why he failed to disclose the Cliffside Deal" to a CRC investigator who interviewed him the day before that transaction formally closed. (Ex. H, p. 26) Judge Orlofsky treated Jonsson's representation to the CRC that "Eastbound Collective LLC, the investor in Holistic, is 100% owned by me," the very day before Jonsson executed the agreement transferring 70% of Eastbound to Cliffside, as powerful evidence that Jonsson "was certainly not forthcoming" with CRC regulators. (Ex. H, p. 25)

Judge Orlofsky found "simply not credible" Respondents' contention that Jonsson retained complete control of Eastbound after the Cliffside deal. (Ex. H, p. 21) He observed that the governing operating agreement gave Cliffside 70% of the voting units and the power to remove Jonsson at any time, with or without cause. (*Id.*) He likewise found that Eastbound's counsel's

later representation that "Cliffside's investment is purely financial" was "false and directly at odds with the plain language" of the Eastbound Operating Agreement. (Ex. H, p. 41)

Judge Orlofsky found that the record established, without meaningful contradiction, that 70% of Eastbound's investment in Holistic ultimately originated from Cliffside through unsecured loans from an outside lender, making Cliffside the single largest source of investment in Holistic, something entirely unknown to Holistic and the CRC. (Ex. H, p. 27) Holistic and the CRC obviously were also unaware that the outside lender, Tangela Holdings, LLC, was an amorphous entity from Cyprus with conspicuous ties to Curaleaf and no evident source of capital, at least none the Respondents were willing or able to disclose. Judge Orlofsky found that when Jonsson finally disclosed Cliffside in February 2024, his disclosure form still omitted the Sciarrones and the true funding source and falsely stated that Cliffside "consists of only one person." (Ex. H, p. 40)

On Respondents' own grievances comprising their various counterclaims, Judge Orlofsky found the evidence sorely lacking. He found that Holistic provided Eastbound with the same quarterly financial statements as every other member, plus additional daily sales-tracking access no other member received, and that Ms. Nickelson reasonably declined to grant broader access given her well-founded concern that Jonsson was leaking confidential data. (Ex. H, pp. 34-35) He found that the initial and construction budgets were prepared and discussed with Jonsson, and that Ms. Nickelson's decision to gather roughly ninety (90) days of actual sales data before finalizing the first annual budget was reasonable in a nascent recreational market. (*Id.*) Ultimately, Respondents produced no evidence of harm from any alleged delay. (Ex. H, p. 88)

In rejecting Respondents' ignorance of the law defense, Judge Orlofsky rightly found these marijuana industry veterans to be "sophisticated businessmen" advised by "experienced legal counsel." (Ex. H, p. 63) He found their course of conduct of a nature "likely to mislead the NJ-

CRC." (Ex. H, pp. 63-64) He rejected as "entirely unpersuasive" Respondents' argument that there was no Regulatory Problem because the CRC had not actually taken punitive action against either Eastbound or Holistic, an argument indifferent to their regulatory counsel's previously discussed and evidently effective efforts to convince the agency to stand down. (Ex. H, p. 64 n. 25) Judge Orlofsky correctly determined that no punitive measures were undertaken simply because the CRC had deferred action while awaiting the outcome of this very arbitration. (*Id.*)

In granting Holistic complete declaratory relief, Judge Orlofsky held that Eastbound's challenged removal and forfeiture were self-executing, occurring by operation of law. (Ex. H, p. 69) He found that Eastbound automatically forfeited all of its membership interests for no consideration by failing to cure the Regulatory Problem within the applicable cure period (Ex. H, pp. 94-95), that forfeiture was automatic and required no company action, and that the unaffected members had in any event confirmed the removal by unanimous written consent as authorized by the RULLCA. (Ex. H, pp. 67-68) Judge Orlofsky rejected every one of Eastbound's affirmative claims. (Ex. H, pp. 74-91) He dismissed with prejudice Eastbound's twelve counterclaims and third-party claims, including its claims for denial of inspection and financial information, minority-member oppression (which fails as a matter of law under the RULLCA and is barred by the economic-loss doctrine), breach for the budget timing, mismanagement (barred by the business-judgment rule, with Respondents offering only post-removal declining sales as proof), and breach of the Option Agreement (invalid because Eastbound had already breached, forfeited its interest, and become statutorily ineligible before purporting to exercise the option). (*Id.*)

Section 14.15 of the Holistic OA provided for the "prevailing party" to recover reasonable attorneys' fees and certain expenses. (Ex. A, p. 43; Ex. H, p. 91) Accordingly, Judge Orlofsky summoned each party's respective fee application and objections at the close of the record and

comprehensively reviewed them before issuing his decision. Applying New Jersey's two-part *Singer v. State*, 95 N.J. 487 (N.J. 1984) prevailing-party test and the lodestar reasonableness factors, he found that Holistic "prevailed on approximately eighty-five percent" of the claims it asserted and defended, and that Ms. Nickelson defeated all ten claims against her and prevailed on her declaratory-judgment claim. (Ex. H, pp. 92-96) He found the hours and rates of Petitioners' counsel reasonable, noting that Petitioners' counsel billed at rates well below the rates charged by Respondents' counsel, and that Petitioners' counsel billed far fewer hours than Respondents' counsel. (Ex. H, pp. 97-106)

Judge Orlofsky entered a monetary award of $1,377,277.55 in favor of Holistic and against Eastbound, comprising reasonable attorneys' fees, expenses, litigation-support and stenographic costs, and Holistic's share of the Arbitration fees, after conscientiously reducing the request to reflect the claims on which Holistic did not prevail and to exclude non-arbitration and fact-witness time. (*Id.*) He entered a separate award of $627,650.94 in favor of Ms. Nickelson and against Eastbound for the fees and expenses she personally incurred defending Eastbound's meritless individual claims. (*Id.*) Judge Orlofsky further awarded Petitioners post-judgment interest at the annual rate of 6.5% until paid in full. (Ex. H, pp. 106-107)

In sum, the Award is a thorough, reasoned, and internally consistent determination by a distinguished retired federal judge, resting on express credibility findings and a detailed weighing of the documentary and testimonial record, all of which favor Petitioners. Every claim Petitioners needed to win, they won, and every claim Respondents advanced against Petitioners was rejected. The Award is final, binding, and non-appealable by the parties' agreement, and it warrants confirmation in its entirety. Respondents have refused to pay any portion of the Award and have ignored all attempts by Petitioners to collect and enforce the Award.

The Award is final and resolves all claims and counterclaims submitted to Arbitration, and Judge Orlofsky does not retain further authority over the parties' disputes. The Award has not been vacated under 9 U.S.C. § 10, or modified or corrected under 9 U.S.C. § 11, and no application to vacate, modify, or correct the Award is pending. Respondents' timeline to challenge the Award has lapsed. Pursuant to 9 U.S.C. § 9, Petitioners have timely brought this action within one year after the Award were issued on April 16, 2026.

## LEGAL ARGUMENT

### I. PETITIONERS ARE ENTITLED TO CONFIRMATION OF THE ARBITRATION AWARD UNDER THE FEDERAL ARBITRATION ACT, 9 U.S.C. § 9

Petitioners are entitled to a confirmation of the Award because (1) the parties agreed the Award would be binding and final; (2) Respondents have failed to assert a timely legal challenge to the Award; (3) there are no cognizable legal grounds for such a challenge; and (4) confirmation is therefore mandatory under Section 9 of the FAA.

Section 9 of the Federal Arbitration Act provides:

> If the parties in their agreement to arbitrate have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in or for the district in which such award was made.

9 U.S.C. § 9.

#### A. Respondents Expressly Waived Any Legal Right to Challenge the Award

Where the parties to an arbitration clause agree that the arbitration shall be final and binding, the parties are deemed to have consented to judicial confirmation of their awards because

judicial confirmation and a corresponding judgment is the only way to make arbitration awards final and binding. *See Teamsters-Emp. Loc. No. 945 Pension Fund v. Acme Sanitation Corp.*, 963 F. Supp. 340, 347 (D.N.J. 1997) (stating that "language that indicates the award will be final and binding implicitly permits federal court intervention to compel compliance"); *see also Terra Nova Trading Inc. v. Cashew Indus. W. Afr.*, 732 F. Supp. 3d 363, 366 (D.N.J. 2024).

Sections 14.12(b) and 14.12(d)(v) of the Holistic OA provide respectively that "the decision of the arbitrator. . . must be final, binding, conclusive, and non-appealable" and that "the award of the arbitrator is final and is not subject to appeals by either party." (Ex. A) This preclusive language is unambiguous, unequivocal and absolute. It establishes that the parties not only agreed that the Arbitration Award would be binding; they expressly waived any right to appeal the Award or seek other legal recourse from its enforcement. Federal courts have upheld waivers of appellate rights within arbitration agreements. *See Tabas v. Tabas,* 47 F.3d 1280, 1288 (3d Cir. 1995) (observing that, where a contract provided for "final, binding, and non-appealable" arbitration, the Court must adhere to the arbitration decision on the merits); *see also Beckley Oncology Assocs., Inc. v. Abumasmah*, 993 F.3d 261 (4th Cir. 2021); *see also MACTEC, Inc. v. Gorelick,* 427 F.3d 821, 830 (10th Cir. 2005). The waivers preclude Respondents from asserting any legal challenge to the Award regardless of its nature and irrespective of the merits.

**B. Any Challenge to the Award Would Now Be Untimely**

Even where there are no such waivers, judicial review over an arbitration award is extremely limited in time and scope. Confirmation of an arbitration award under the FAA is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must confirm the award unless the award is vacated, modified or corrected. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008) (finding that Section 9 of the

FAA's provision for judicial confirmation "carries no hint of flexibility" and "unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies."); *see also Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 248 (3d Cir. 2020) (holding that the FAA "not only authorizes, but mandates, that district courts confirm arbitration awards by converting them into enforceable judgments through a summary proceeding.").

Under Section 12 of the FAA, 9 U.S.C. § 12, a motion to vacate, modify or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. A party's failure to seek modification, vacation or correction of an arbitration award within the FAA's three-month limitation period entitles the prevailing party to confirmation of all claims adjudicated within the arbitration. *See Teamsters Loc. 177*, 966 F.3d at 255 (stating that after the three-month period elapses, an opposing party cannot assert a ground for vacating, modifying, or correcting an award, even as an affirmative defense to the application to confirm); *see also Jeereddi A. Prasad, M.D., Inc., Ret. Plan Tr. Profit Sharing Plan v. Invs. Assocs., Inc.*, 82 F. Supp. 2d 365, 367-68 (D.N.J. 2000) (holding that the FAA "does not permit the assertion of challenges to an arbitration award in opposition to a motion to confirm the award after the three-months limitations period has expired."). The Arbitration Award and Memorandum Opinion was issued by Judge Orlofsky and served on the parties on April 16, 2026. (Exs. G, H and I)

If Respondents intended to seek vacation, modification, or correction of the Arbitration Award, it was incumbent upon them to file and serve a motion for such relief within the statutory timeline after the Award was finalized. Because Respondents failed to do so, they are now time-barred from cross-moving to vacate, modify or correct the Award, and thereby precluded as a matter of law from interposing any substantive defense to Petitioners' motion for confirmation of the Award and the entry of Judgment. The three-month deadline under the FAA to serve notice of

a motion to vacate an arbitration award is not subject to extension. *See Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984) (holding that "[n]o exception to this three-month limitations period is mentioned in the statute.").

**C. There are No Cognizable Legal Grounds to Vacate the Award**

The lack of a timely application to vacate stems not only from the preclusive effect of the parties' mutual understanding as to the finality of the Arbitration proceeding, but also because there are no conceivable legal grounds on which a legal challenge could be plausibly asserted. Under Section 10 of the FAA, 9 U.S.C. § 10(a), there are only four grounds to vacate an award: (1) where the award was the product of corruption or fraud; (2) where there was evident partiality or corruption on the part of the arbitrator; (3) where the arbitrator was guilty of misconduct in refusing, upon sufficient cause shown, to postpone the hearing or hear pertinent and material evidence; and (4) where the arbitrator exceeded his powers. Section 11 of the FAA, 9 U.S.C. § 11, provides for modification or correction of an arbitration award (a) where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (b) where the arbitrator awarded upon a matter not submitted to him, unless it is a matter not affecting the merits of the decision upon the matter submitted, or (c) where the award is imperfect in a matter not affecting the merits of the controversy.

Even if Respondents had made a timely motion seeking relief from the Award, the application would have been frivolous. There are no legitimate grounds to challenge the Award under the FAA. The Arbitration proceedings were presided over by a preeminent retired United States District Judge of considerable stature and an impeccable reputation. Judge Orlofsky was fair and impartial in discharging his responsibility throughout the Arbitration proceeding. He duly

afforded Respondents wide latitude in presenting a defense, counterclaims, and affirmative claims which were lacking in evidence and tertiary to the legal issues implicated by Eastbound's removal and the forfeiture of its membership interest. Judge Orlofsky adjudicated the issues that were presented by the parties. No plausible argument can be asserted that he exceeded his authority in any way or otherwise adjudicated matters beyond those voluntarily raised by the parties themselves in accordance with their mutual agreement to arbitrate disputes arising from the Holistic OA.

Judge Orlofsky's factual findings are also supported overwhelmingly by the evidentiary record developed during the Arbitration. His legal determinations are consistent with the letter and spirit of the applicable statutory, regulatory and contractual provisions, and reflect a sound and faithful adherence to the rule of law. The 107-page Memorandum Opinion Judge Orlofsky issued in support of the Award is thorough, comprehensive, well-reasoned and, by any standard of review, unassailable. (Ex. H) The decision obviously passes muster under the highly deferential review that applies to confirmation of an arbitration award under the FAA. Accordingly, Petitioners' request for Confirmation of the Arbitration Award must be granted, and a judgment should be entered in favor of Petitioners against Respondents.

## II. THE FEDERAL CRIMINAL PROHIBITION OF CANNABIS SALES DOES NOT GIVE RISE TO AN ILLEGALITY DEFENSE

The Third Circuit's non-precedential decision in *Apical Biotek, LLC v. Maitri Holdings, LLC*, No. 25-1396, 2026 WL 177927 (3d Cir. Jan. 22, 2026) does not deprive this Court of authority to grant the relief requested in this Petition notwithstanding that marijuana remains a Schedule I controlled substance under the Controlled Substances Act ("CSA"), 21 U.S.C. § 812. Petitioners ask the Court merely to enforce an agreement to arbitrate and thereby give legal effect to a proper adjudication of arbitral matters of corporate governance and ownership transactionally removed from the sale and distribution of marijuana. They seek judicial imprimatur of declaratory

relief—the removal of law-breaking members from the Company and the forfeiture of their investment interests—expressly prescribed in self-executing contractual provisions of the Holistic OA. Those very provisions are designed to incentivize compliance with laws and regulations that condition and limit participation in the cannabis industry in the precise manner contemplated in federal precedent reconciling the prohibitions of the CSA with the legalization of marijuana in states throughout the country, promoting comity between conflicting state and federal law. *See United States v. Stacy*, 156 F.4th 994, 1000 (10th Cir. 2025) (citing the Consolidated Appropriations Act, 2024, Pub. L. No. 118-42, § 531, 138 Stat. 25, 174 (2024)); *see also United States v. Sirois*, 119 F.4th 143 (1st Cir. 2024).

Petitioners also seek monetary recovery for reasonable attorneys' fees and costs incurred in an unavoidable arbitration proceeding necessary to enforce those provisions; not compensatory damages for some contractual outputs or performance breach in the sale or distribution of marijuana. The enforcement of the Award thus does not in any way demand, promote or condone illegal conduct. Rather, confirmation of the Award will appropriately give effect to the abiding respect for the rule of law reflected in Judge Orlofsky's meticulous 107-page Memorandum Opinion.

### A. The Contractual Provisions at Issue Are Severable from the Balance of the Holistic OA Under Controlling Federal Law

The agreement to arbitrate and the Award on the arbitral matters Petitioners seek to have confirmed are severable from the balance of the Holistic OA under both federal arbitration law as well as under the law generally applicable to the determination of whether the enforcement of a contract would violate federal law. The United States Supreme Court in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) held that as a matter of substantive federal arbitration law, an arbitration clause is severable from the balance of the contract. The Court

further held that challenges to the overall validity of the contract containing the agreement to arbitrate, most particularly on grounds of illegality, must be presented in the first instance to the arbitrator. *Id.* Respondents did not challenge the agreement to arbitrate or the Holistic OA containing it, either on grounds of illegality or any other basis. Respondents actively availed themselves of an arbitration process they planned and threatened to initiate, asserting affirmative claims against not just Holistic, but frivolous ones against Ms. Nickelson individually, part of a scorched earth litigation strategy designed to bankrupt the Petitioners. Respondents will have succeeded in that endeavor if, after withstanding that effort and prevailing in a contentious proceeding over well-funded and relentless opposition, Petitioners are left with no recourse for judicial affirmation of their right to remove the offending lawbreakers and to be reimbursed for their monumental litigation expenses incurred in securing that right.

There is no controlling legal authority establishing some categorical rule against the federal judicial enforcement of cannabis-adjacent contracts or blanket prohibition on federal court involvement in cannabis business disputes compelling such an injustice. The rule of contract severability extends beyond arbitration clauses to the subject matter of the contractual rights to be enforced, a principle deeply ingrained in federal precedent on the doctrine of illegality dating back to the nineteenth century. *See, e.g.*, *McMullen v. Hoffman*, 174 U.S. 639, 669-70 (1899); *Cont'l Wall Paper Co. v. Louis Voight & Sons Co.*, 212 U.S. 227, 262 (1909); *Sola Elec. Co. v. Jefferson Elec. Co.*, 317 U.S. 173, 176-77 (1942); *Kelly v. Kosuga*, 358 U.S. 516, 519 (1959); *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83-84 (1982).

The gravamen of the rule is that where the enforcement of the asserted contractual rights would not itself constitute a violation of federal law, the defense of illegality should be rejected.

The rule largely was developed in connection with commercial disputes arising from illegal contracts in restraint of trade violating the Sherman Antitrust Act, 15 U.S.C. §§ 1-7 and other criminal antitrust laws. As observed more recently in *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692 (6th Cir. 2017), what emerged from these cases is a guiding principle of restraint, namely that "courts should be reluctant to 'create a policy of nonenforcement of contracts beyond that' [clearly required]" to avoid transgressing the applicable federal law. *Hemlock*, *supra* (citing *Kelly*, 358 U.S. at 518). "In other words, the court should decline to enforce a contract that violates [federal] laws only if 'the judgment of the Court would itself be enforcing *the precise conduct made unlawful* by the Act.'" *Id.* (emphasis in original).

As discussed in *Hemlock*, the dividing line is evident in a comparison of the Supreme Court decisions in *Kelly v. Kosuga*, *supra*, and *Kaiser Steel Corp. v. Mullins*, *supra*. In *Kelly*, the contract to be enforced not only included but was structured around an illegal price-fixing and output restriction arrangement violating the Sherman Act. *Kelly*, 358 U.S. 516. The illegality defense was asserted by the buyer in the transaction against the seller's claim for non-payment. *Id.* The Court rejected the illegality defense notwithstanding the anticompetitive restraints of trade affecting the broader product market, finding that, when examined in isolation, the buy-sell agreement between the two parties to the transaction, was "a lawful sale for fair consideration." *Id.* at 521. Conversely, in *Kaiser* the Court was asked to enforce a contractual provision requiring the defendant to report coal purchases from non-union sources and to contribute a specified amount of money to the union's health and retirement fund for each such purchase. *Kaiser Steel Corp.*, 455 U.S. 72. In naturally making such purchases more expensive, the contribution requirement was challenged as anticompetitive and a violation of federal antitrust law. *Id.* The Supreme Court permitted an illegality defense based on this violation because the plaintiff sought to enforce the

non-union coal purchase contribution requirement itself, the exact provision the defendant challenged as unlawful. *Id.* In reconciling the *Kaiser* decision with *Kelly,* the *Hemlock* court explained that *Kelly* enforced a legal promise that was part of an illegal agreement while *Kaiser* declined "to enforce a promise that was deemed illegal in and of itself." *Hemlock*, 867 F.3d at 699 (citing *Kaiser Steel Corp.*, 455 U.S. at 79-82).

### B. Controlling Precedent Precludes an Illegality Objection or Defense

*Kaiser*, *Hemlock* and the Supreme Court's foundational nineteenth-century decision in *McMullen,* are identified prominently as controlling law in Circuit Judge Shwartz's non-precedential opinion in *Apical Biotek* as well as in Judge Matey's concurring opinion wherein the Supreme Court's decision in *Kelly* also is invoked. Applying these precedents to this Petition for Confirmation involves simple math. As in those cases, the agreement to arbitrate and the removal and forfeiture provisions from which the Arbitration Award emerges are severable from provisions within the Holistic OA contemplating the sale of marijuana. The contractual provisions implicated in this Petition involve collateral matters of ownership, governance, legal compliance and dispute resolution that are in harmony with federal law. A judgment of confirmation from this Court, by any reasoned measure, would not involve "enforcing the precise conduct made unlawful [by the CSA]." *Hemlock*, 867 F.3d at 698 (citing *Kelly*, 358 U.S. at 518). Confirmation should thus be granted as a matter of law under controlling Supreme Court precedent.

Because an illegality defense was not asserted by Respondents in the Arbitration and consequently under the Supreme Court decision in *Buckeye* has been waived, if the Court were somehow inclined to entertain the denial of this Petition on grounds of illegality, it would have to do so *sua sponte*. The Court would then have to fashion and apply a categorical rule against federal court involvement in cannabis-related disputes, breaking not only with long established Supreme Court precedent but also the Court's own recent cannabis industry jurisprudence.

Specifically, in *Curaleaf Holdings, Inc. v. New Jersey Cannabis Regul. Comm'n*, No. CV 25-16397 (MAS) (RLS), 2026 WL 1481529 (D.N.J. May 27, 2026), this Court rejected the CRC's illegality defense in the face of Curaleaf's successful challenge to the agency's union friendly labor peace and collective bargaining agreement licensure requirements. In doing so, the Court found that the conduct giving rise to Curaleaf's claims for relief from those union friendly regulatory requirements was not "immediate[ly] and necessarily related to Plaintiff's illegal conduct." *Id.* at *7 (citing *In re New Valley Corp.*, 181 F.3d 517, 535 (3d Cir. 1999)). Although Curaleaf obviously opposed the requirements because they impeded and cut into the profit margins of its marijuana sales operations, the Court found the company's alleged wrongdoing in "operating in a business regulated by state law but illegal under the… CSA []", to be "*collateral*" to Curaleaf's affirmative claims for relief. *Id.* at *7 (emphasis added).

*Curaleaf Holdings* dictates a consistent rejection of any illegality objection or defense in response to this Petition. The confirmation of the Arbitration Award here is not "immediately and necessarily related to any illegal conduct" and must accordingly be deemed collateral to that conduct. *Id.* at *7. Indeed, this confirmation proceeding is far further removed from Holistic's participation in the New Jersey cannabis industry in compliance with state law than Curaleaf's legal challenge to state regulation was from the federally prohibited commercial endeavors the challenge advanced. The contractual rights to be enforced in this Petition arise from a prior adjudication in a private arbitration, an alternative dispute resolution heavily favored under the FAA. The confirmation of the Arbitration Award in accordance with the FAA constitutes a secondary enforcement of those lawful contractual rights still further attenuated from Holistic's federally prohibited conduct as a matter of federal substantive and procedural law. In being a step further removed from a prior private adjudication, the confirmation of an arbitration award arising

from a cannabis industry-related dispute of this nature can be analogized to the decision of the U.S. District Court for the District of Maryland in *Bartch v. Bartch*, 721 F. Supp. 3d 380 (D. Md. 2024). The court in *Bartch* enforced a charging order directing that distributions from a cannabis LLC's membership interests be redirected to a judgment creditor against an illegality defense. *Id.* The court reasoned that the remedy being sought was the enforcement of a binding judgment from another federal court, not the enforcement of a contract requiring illegal conduct. *Id.* The court added that its order did not require any party to violate federal law, something that obviously is true of the relief sought by Petitioners. *Id.*

### C. A Blanket Prohibition Against the Enforcement of Cannabis Industry Contracts in Federal Court Is Irrational and Legally Untenable

The denial of this Petition based on a blanket prohibition against the enforcement of cannabis industry-related contracts would necessarily be predicated on a normative preference for criminal antitrust violations to which severability consistently applies, over violations of the CSA stemming from the sale and use of marijuana. Such a distinction would appear to be without legal and rational basis and swimming hopelessly against the tide of the times. Criminal antitrust violations under the Sherman Act constitute a felony carrying potential multi-million-dollar fines and up to ten-year prison sentences. Though recreational marijuana continues to be federally prohibited under the CSA, Congress has accommodated state legislation permitting marijuana use for over a decade through an annual appropriations rider called the Rohrabacher-Farr Amendment that effectively bars nearly all federal criminal prosecutions for CSA marijuana violations involving conduct permitted under state medical marijuana laws.

More recently, in April 2026, the U.S. Department of Justice issued a final rule rescheduling FDA-approved and state licensed medical marijuana products to Schedule III, permitting its interstate sale. While there remain significant hurdles to the federal legalization of

recreational marijuana use, it has fierce advocates in government, the political establishment and throughout the general populace. In contrast, there are neither serious advocates nor any nascent legal or political movement for the repeal of the Sherman Antitrust Act. Marijuana industry-related contracts thus cannot be singled out for categorical exclusion from enforcement in federal courts either logically or consistent with controlling federal precedent. Federal law requires the application of a rule of restraint which if applied faithfully in accordance with well-established precedent compels the grant of this Petition over any objection or defense on grounds of illegality, whether raised improperly by Respondents despite their aforementioned waiver or interjected by this Court from an unwarranted deference to and an overbroad application of a non-precedential Circuit Court decision.

### D. The Objectives of the Federal Arbitration Act Override Any Illegality Objection

In seeking the confirmation of an arbitration award, this Petition must be distinguished from other reported cases involving marijuana adjacent subject matter or the enforcement of contracts arising from the sale or distribution of marijuana. The FAA's strong federal policy favoring arbitration recognized by the Supreme Court in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) requires confirmation absent specific statutory grounds for vacatur. Federal policy favoring arbitration must be considered paramount over any lesser, non-categorical objection to confirmation where diversity of citizenship provides the independent jurisdictional basis for the confirmation proceeding. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Moses H. Cone, supra*; *see also France v. Bernstein*, 43 F.4th 367 (3d Cir. 2022). This is particularly evident from the noted absolute rule of general application established in *Buckeye*—for the specific purpose of rejecting an illegality defense—that an agreement to arbitrate is severable from the balance of the contract. Petitioners do not ask this Court to enforce any

contractual provision violating federal law. The declaratory relief involves only affirmation of a removal and forfeiture that has already been internally implemented and upheld by the Arbitrator. Their monetary claims arise from an award of fees and costs arising from the Arbitration, not from the sale or distribution of marijuana. These critical and dispositive distinctions are fatal to any argument for non-enforcement on grounds of illegality.

Petitioners faithfully persevered through an arduous and financially debilitating Arbitration proceeding against formidable out-of-state adversaries with the reasonable expectation that their ultimate victory would not be rendered Pyrrhic by a sudden, unnecessary and legally unwarranted reluctance on the part of New Jersey federal courts to confirm arbitration awards arising from contractual disputes touching upon the cannabis industry. The fair administration of justice requires that those reasonable expectations be met through the confirmation of the Award.

## III. PETITIONERS ARE ENTITLED TO CONFIRMATION OF THE AWARD UNDER NEW JERSEY STATE LAW, N.J.S.A. 2A:23B-22

Petitioners are further entitled to confirmation of the Arbitration Award and a corresponding judgment under the New Jersey Revised Uniform Arbitration Act (the "Act") which provides a parallel and independent basis for confirmation. Under N.J.S.A. 2A:23B-22, "after a party to an arbitration proceeding receives notice of an award, the party may file a summary action with the court for an order confirming the award, at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to section 20 or 24 of this act or is vacated pursuant to section 23 of this act." As under the FAA, confirmation is mandatory and ministerial under the Act once a party who has received notice of the award applies, absent a timely, successful application to modify, correct, or vacate.

Unless a party timely seeks to vacate or modify an award, confirmation should be summarily granted. *See Rappaport v. Pasternak*, 260 N.J. 230 (N.J. 2025), *reconsideration*

*denied*, 260 N.J. 356 (N.J. 2025); *see also City of Atl. City v. Atl. City Firefighters Local 198, IAFF*, 234 N.J. Super. 596, 601 (N.J. Super. Ch. Div. 1989) (emphasizing that when an arbitration award is presented to a court for confirmation and enforcement, the presumption is in favor of the award's validity). The Act further sets forth the peremptory command that the court, upon application of the party, "shall" confirm an award if the court denies a motion to vacate an award. N.J.S.A. 2A:23B-23(d). Respondents had one hundred twenty (120) days to make such application; no application has been made, and the statutory window to bring one has lapsed.

Upon confirmation, the Court "shall enter a judgment in conformity with the arbitrator's award," enforceable as any other judgment. N.J.S.A. 2A:23B-25(a). As prevailing parties, Petitioners are further entitled to their reasonable costs and, in the Court's discretion, their reasonable attorneys' fees and expenses of this proceeding. N.J.S.A. 2A:23B-25(b) and (c).

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court confirm the Final Judgment and Award dated April 16, 2026, in its entirety; enter judgment in favor of Holistic and against Eastbound in the amount of $1,377,277.55, and in favor of Ms. Nickelson and against Eastbound in the amount of $627,650.94; award post-judgment interest as provided in the Award and by law, together with the costs of this proceeding and Petitioners' reasonable attorneys' fees and expenses under N.J.S.A. 2A:23B-25(b) and (c); and grant such other and further relief as the Court deems just and proper.

Dated: October 20, 2026

Respectfully submitted,
**A.Y. STRAUSS LLC**

By: ______________________________
Robert J. Donaher, Esq.
Alexa E. Sjolund, Esq.

290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel: 973-582-7462
rdonaher@aystrauss.com
asjolund@aystrauss.com
*Attorneys for Petitioner Holistic Solutions LLC*

**MONTGOMERY, McCRACKEN, WALKER & RHOADS LLP**

By: */s/ Lathrop B. Nelson, III*
Lathrop B. Nelson, III, Esq.
1735 Market Street
Philadelphia, PA 19103-7505
Tel: 215-772-7473
lnelson@mmwr.com
*Attorneys for Petitioner Suzan Nickelson*