EXHIBIT E

UNDER THE JAMS COMPREHENSIVE
ARBITRATION RULES AND PROCEDURES

| | |
|---|---|
| HOLISTIC SOLUTIONS LLC,<br><br>Claimant,<br><br>- against -<br><br>EASTBOUND COLLECTIVE LLC, PATRIK JONSSON and ROBERT SCIARRONE.<br><br>Respondents. | Case No. 5425002519 |

**AMENDED DEMAND FOR ARBITRATION**

A.Y. Strauss LLC
Robert J. Donaher, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
973-582-7462

Attorneys for Claimant

*September 24, 2024*

## I. INTRODUCTION

1. Claimant Holistic Solutions LLC ("Holistic," the "Company," or "Claimant") respectfully submits this Demand for Arbitration against Respondents Eastbound Collective LLC, purported member in Holistic ("Eastbound" or "Respondent"), and Eastbound's principals, Patrik Jonsson and Robert Sciarrone, in accordance with Section 14.12 of the Second Amended and Restated Operating Agreement for Holistic Solutions LLC, dated September 16, 2022 (the "Operating Agreement") and pursuant to the Judicial Arbitration and Mediation Services ("JAMS") Comprehensive Arbitration Rules and Procedures (the "JAMS Rules"). Set out below are the particulars of the dispute in accordance with Rule 9(a) of the JAMS Rules.

2. Claimant Holistic operates a licensed cannabis dispensary located in Waterford, New Jersey. Respondent Eastbound was an owner of roughly 35% of Holistic until the other members of the Company voted to remove Eastbound in accordance with the express terms of the Operating Agreement when they uncovered a years' long fraud which compromised Holistic's cannabis license.

3. Although Eastbound repeatedly claimed to be wholly owned by Respondent Patrik Jonsson, it had an undisclosed 70% owner, Respondent Robert Sciarrone, who was a principal of Curaleaf NJ II, Inc. ("Curaleaf"), another New Jersey cannabis company. Mr. Jonsson brazenly and repeatedly lied to the other members of Holistic and to the New Jersey Cannabis Regulatory Commission (the "CRC") to hide the existence of this other owner, who appears to have exercised significant control over Eastbound.

4. Making fraudulent statements to the CRC and the failure to disclose an owner are both grounds for penalties, including the revocation of a license, under New Jersey law.

5. To protect Holistic's license, Holistic's other members unanimously decided to invoke Section 10.02 of the Company's Operating Agreement—which permits the divestment of a member who creates a "Regulatory Problem" that it fails to cure within 90 days—and removed Eastbound as a member on February 21, 2024. Holistic also terminated its Intellectual Property License Agreement with Eastbound (the "License Agreement") on February 21, 2024, citing Eastbound's default under that agreement.

6. Eastbound has refused to acknowledge its removal and continues to demand its readmission to the Company. Eastbound also rejects the termination of the Licensing Agreement.

7. Holistic brings this arbitration seeking declaratory relief that Eastbound was properly divested from the Company under the terms of the Operating Agreement and that the Licensing Agreement was validly terminated, as well. Holistic also seeks an order requiring Respondents to pay Claimant's legal expenses and any fines and penalties arising from Respondent's deception, damages arising from Respondent's breaches of the License Agreement, and all arbitration costs, including Claimant's attorneys' fees and expenses.

## II. THE PARTIES AND THEIR REPRESENTATIVES

8. Claimant Holistic is a New Jersey limited liability company. Its principal place of business is in Waterford, New Jersey. Claimant's address and contact information are as follows:

451 White Horse Pike
Waterford, NJ 08004

9. Claimant's counsel is:

A.Y. Strauss LLC
Robert J. Donaher, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel: 1-973-582-7462
*rdonaher@aystrauss.com*

10. Respondent Eastbound is a Delaware limited liability company with its principal place of business believed to be in Osterville, Massachusetts. It is purportedly owned by Patrik Jonsson and Cliffside I LLC ("Cliffside"). According to the Licensing Agreement, Respondent's address and contact information for the purpose of service are as follows:

29 Hathaway Road
Osterville, MA 02655

11. Respondent Patrik Jonnson is a Massachusetts resident and a principal of Eastbound whose address and contact information is the same as Eastbound.

12. Respondent Robert Sciarrone, upon information and belief, is a New Jersey resident and the sole owner of Non-party Cliffside. Upon information and belief, his business contact information is Cliffside, LLP c/o Waldman Hirsch, 3 Second Street, Jersey City, New Jersey 02655.

13. Upon information and believe, Mr. Sciarrone is the Senior Vice President for the Northeast Region of Curaleaf Holdings Inc., as well as a principal of Curaleaf, which holds a cannabis license in New Jersey.

14. Respondent Eastbound is represented by:

Sills Cummis & Gross PC
One Riverfront Plaza
Newark, NJ 07102

Robert Schiappacasse
*rschiappacasse@sillscummis.com*

## III. THE ARBITRATION AGREEMENT

15. On September 16, 2022, Eastbound and the other members of Holistic signed the Operating Agreement, a true and correct copy of which is attached to Holistic's original Demand for Arbitration as **Exhibit A**.

16. This arbitration is initiated pursuant to Section 14.12 of the Operating Agreement, which provides as follows:

> (a) Arbitration. Except in the event of any litigation or proceeding commenced by any third party (i.e., not a party to this Agreement) against a Member in which another Member is an indispensable party or a potential necessary third-party defendant, any dispute or controversy between any of the parties involving the interpretation, construction or application of any terms of this Agreement, or transactions under it, must be solely and finally settled by arbitration in accordance with the commercial rules then in effect of the Judicial Arbitration and Mediation Services ("JAMS"); provided, however, that all Members agree to enter into mediation and attend at least one session of mediation before commencing arbitration. If a disputing Member files a judicial or administrative action asserting claims subject to arbitration, as prescribed in this Agreement, and the other disputing Member successfully stays the action and/or compels arbitration of the claims, the disputing Member filing the action must pay the other disputing party's costs incurred in seeking the stay and/or compelling arbitration, including reasonable attorneys' fees.

(b) Selection of Arbitrator. Within twenty (20) days after the responding party's receipt of the instituting Member's demand, the instituting Member and the responding Member must attempt to agree on an arbitrator (who is, in their view, knowledgeable with respect to the issues in dispute) to hear and determine the dispute. If they are unable to do so within the twenty (20)-day period, either Member may petition JAMS to appoint an arbitrator. The decision of the arbitrator must be in accordance with the provisions of this Section 14.12 and must be final, binding, conclusive, and non-appealable.

(c) Arbitration Proceedings.

(i) Unless otherwise agreed to by the disputing parties, all arbitration proceedings must be conducted in Newark, New Jersey, at a place, date, and time mutually acceptable to the disputing Member.

(ii) The Members and the arbitrator must treat all aspects of the arbitration proceedings, including discovery, testimony and other evidence, briefs, and the award, as strictly confidential.

(d) Award.

(i) Except with respect to provisional remedies, the arbitrator has the authority to award any remedy or reward that a court in the United States of America could order or grant, including specific performance of any obligation created under this Agreement, the issuance of an injunction or other provisional relief, or the imposition of sanctions for abuse or frustration of the arbitration process.

(ii) The arbitration award must be in writing and must specify the factual and legal basis for the award.

(iii) Any monetary award of the arbitrator must be made and be payable in US Dollars. Any such monetary award must include interest from the date of any breach or any violation of this Agreement. The arbitrator must fix an appropriate rate of interest from the date of the breach or other violation to the date when the award is paid in full.

(iv) Subject to Section 14.15, the arbitrator must determine how the fees and expenses of the arbitration must be borne by the disputing parties. Those fees and expenses must include all reasonable pre-award expenses of the arbitration, including the arbitrator's fees, administrative fees, travel expenses, out-of-pocket expenses, witness fees, and attorneys' fees.

(v) The award of the arbitrator is final and is not subject to appeals by either party.

(vi) Judgment on the arbitration award may be entered in any court having jurisdiction over the parties or their assets.

17. On June 26, 2024, Claimant and Respondent attended a mediation session in compliance with Section 14.12(a) of the Operating Agreement. While Claimant believed that the

general terms of settlement had been reached during that session, Respondent subsequently sent Claimant a term sheet grossly misstating those agreed-upon terms.

## IV. GOVERNING LAW

18. Section 14.11 of the Operating Agreement bears the heading "Governing Law." It reads in its entirety as follows:

> Governing Law. All issues and questions concerning the application, construction, validity, interpretation, and enforcement of this Agreement shall be governed by and construed in accordance with the internal laws of the State of New Jersey, without giving effect to any choice or conflict of law provision or rule (whether of the State of New Jersey or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of New Jersey.

19. Because this dispute is a "dispute or controversy between any of the parties involving the interpretation, construction or application of any terms of this Agreement, or transactions under it," there can be no doubt that JAMS has jurisdiction to resolve this matter.

20. Accordingly, these disputes should be decided under New Jersey law by a sole arbitrator jointly selected by the parties or, should they fail to reach agreement on an arbitrator, appointed by the JAMS in consultation with the parties under Rule 15 of the JAMS Rules.

21. JAMS also has jurisdiction over the claims asserted against the individual Respondent Patrik Jonnson and Robert Sciarrone because they are the sole principals of Eastbound and they committed, engaged in or directed Eastbound's wrongful actions, including ongoing conduct necessitating this arbitration. They are also beneficiaries of the Operating Agreement. They are thus either subject to the Arbitration Agreement or otherwise estopped from challenging the jurisdiction of this tribunal over them in connection with these disputes. Their participation in this arbitration is also necessary to avoid piecemeal or bifurcated litigation with interrelated claims proceeding separately before this panel and a court of competent jurisdiction.

## V. STATEMENT OF FACTS

22. Suzan Nickelson, the manager and majority owner of Holistic, first met Respondent Patrik Jonsson of Eastbound on April 13, 2022. Holistic had recently been approved for a medical cannabis dispensary license by the New Jersey CRC and was seeking investors. Mr. Jonsson represented that he was an experienced cannabis operator out of

Massachusetts who had the necessary capital to invest after selling his company to Curaleaf. Mr. Jonsson expressed that he wanted to support woman and minority owned businesses in the cannabis industry, such as Holistic.

23. Ms. Nickelson consulted with the other members of Holistic, who agreed to pursue a deal with Eastbound. Ms. Nickelson and Marisa Edmund (who at the time owned 25% of the Company) had spoken to other potential investors, but preferred Eastbound's offer because Mr. Jonsson was a sole proprietor with ample funding and purported experience successfully scaling a company.

24. Eastbound closed an investment into Holistic on September 16, 2022. As part of that deal, Mr. Jonsson certified that he was the sole member of Eastbound. Pursuant to its investment deal, Eastbound paid Holistic $1,700,000 in multiple payments made over the subsequent four months. Unbeknownst to the other members of Holistic, Eastbound accepted a large financial investment from Cliffside in exchange for Cliffside acquiring 70% of Eastbound. Cliffside made this investment no later than December 7, 2022, the date it signed Eastbound's operating agreement. Eastbound used Cliffside's funds to make its investment in Holistic.

25. Before making those payments, Eastbound signed the Operating Agreement, which required Eastbound, among other things, to "to promptly provide all information required or requested by any Marijuana Enforcement Authority of said Member, Manager or Officer."

26. As the holder of both medical and adult use cannabis licenses, Holistic is subject to extensive disclosure requirements under New Jersey statute and regulation, including the identity of all direct and indirect owners over 5%, the source of all funds, and the disclosure of all contracts. Similar disclosure requirements are imposed on cannabis companies in most states.

27. Although Mr. Jonsson was undoubtedly intimately familiar with these disclosure requirements, he chose to blatantly lie about the ownership of Eastbound to the other members of Holistic and the CRC. During the CRC's routine investigation of Eastbound and its investment into Holistic, Mr. Jonsson falsely claimed in a December 7, 2022 email (the same day Eastbound admitted Cliffside as a member) to a CRC investigator that, "[a]s

it stands today Eastbound Collective LLC, the investor in Holistic, is 100% owned by me." In that same email, he cited his sale of a Massachusetts cannabis license to Curaleaf as the source of his funding to Holistic, which was another lie.

28. Mr. Jonsson continued to actively mislead the CRC during his December 13, 2022 phone interview with CRC investigator Joseph Genova by failing to disclose Cliffside's ownership interest in Eastbound or the source of the funds that had been invested in Holistic.

29. As part of its investigation, the CRC was tasked with ensuring compliance with statutory and regulatory limits on the number of cannabis licenses an individual may be associated with. Had Mr. Sciarrone (the owner of Cliffside) been properly disclosed as an indirect owner of 24.5% of Holistic, it is almost certain that the CRC would have sought more information about his role at Curaleaf (which also holds medical and adult use licenses in New Jersey) and it is quite possible that the CRC would not have approved Mr. Sciarrone's addition as a substantial indirect owner of Holistic.

30. On February 6, 2023, Holistic received its permit from the CRC to commence sales to medical cannabis patients. On May 6, 2023, Holistic received its license to sell to the wider adult-use cannabis market.

31. In May 2023, Mr. Jonsson asked Ms. Nickelson if she would show his "friend . . . Bobby" around Holistic's dispensary. Specifically, Mr. Jonsson wrote: "A friend of mine (Bobby) who is interested in potentially getting into the NJ cannabis space as maybe an investor is looking to stop by. Would be grateful if you are around if you could help answer any questions he might have and maybe show him around? I think he is just trying to get a better handle on the NJ market and I know you are tuned in."

32. "Bobby" came to the store on May 25, 2023, where he spent approximately two hours touring the facility and asking about the South Jersey cannabis market. At no point before, during, or after this meeting was it disclosed that "Bobby" was actually Robert Sciarrone, the owner of Cliffside and indirect owner in Holistic itself.

33. Both Mr. Jonsson and Mr. Sciarrone are sophisticated investors who have worked in the cannabis industry for more than a decade and knew or should have known that New

Jersey's regulations required timely disclosure of Eastbound's change in beneficial ownership. Yet Eastbound failed to take prompt action to correct its multiple misstatements to the CRC about the ownership of that company.

34. Holistic operated its cannabis dispensary in compliance with CRC regulations. In order to receive its initial license, the CRC required Holistic to create extensive materials including an operations manual and hundreds of pages of standard operating procedures ("SOPs") on subjects ranging from camera placement to employee training to protocol for checking customer identification at checkout. Eastbound contracted to provide those materials to Holistic in the License Agreement, however, the materials it produced suffered from numerous material defects and did not comply with the CRC's rules in breach of the License Agreement. As a result, Holistic was forced to incur significant legal costs developing brand new materials that met the CRC's exacting requirements. A true and correct copy of the License Agreement is attached to Holistic's original Demand for Arbitration as **Exhibit B**.

35. Nevertheless, Holistic complied with its agreements with Eastbound. For instance, Holistic remitted $4,228.93 in quarterly payments to Eastbound pursuant to the License Agreement. Ms. Nickelson also consulted Mr. Jonsson on the Company budget and product selection and held quarterly member meetings in which the Company presented financial statements and answered member questions, in compliance with the Operating Agreement.

36. On January 30, 2024, Holistic filed an application to renew its annual license with the CRC. Relying on Mr. Jonsson's repeated representations—including most recently, a January 24, 2024 notarized letter from Mr. Jonsson in which he referred to himself as the "Sole Member" of Eastbound—Holistic attested to the CRC that Eastbound was wholly owned by Mr. Jonsson.

37. On February 9, 2024, the CRC sent a deficiency notice to Holistic seeking multiple missing documents, including an entity disclosure form for Eastbound.

38. On February 12, 2024, Eastbound provided its entity disclosure form to Holistic, in which it revealed Cliffside's ownership. That was the first time Holistic's members learned that Eastbound was not wholly owned by Mr. Jonsson and that Cliffside held a majority stake in Eastbound.

39. Eager to stem the fallout from Eastbound's fraudulent concealment of Cliffside's ownership interest, Holistic promptly requested that Cliffside complete and return the disclosure forms required under New Jersey regulations. To this day, however, neither Eastbound nor Cliffside has produced those necessary disclosures.

40. On February 16, 2024, troubled by Mr. Jonsson's deceit and gravely concerned about the existential risk to Holistic's license, the members of Holistic voted to exercise the Company's power under the Operating Agreement and remove Eastbound from the Company. The Company immediately submitted an updated renewal application to the CRC removing Eastbound's membership. The Company fully disclosed the facts of Eastbound's removal to the CRC, which is undertaking its own investigation into Eastbound's actions.

41. The CRC approved Holistic's renewal application on April 3, 2024, but since the CRC's investigation is ongoing, the Company's license remains in limbo. Both the Company and its members could face significant penalties from the CRC (including a ban from owning a New Jersey cannabis license) because of their association with Eastbound and Holistic.

## VI. SUMMARY OF CLAIMS

### A. Breach of Operating Agreement

42. Claimant incorporates all of the foregoing paragraphs by reference as if fully set forth herein.

43. Eastbound's failure to disclose Cliffside's ownership interest constituted a breach the Operating Agreement because it created a "Regulatory Problem," which is defined as follows:

> "Regulatory Problem" means: (a) a determination by any Marijuana Enforcement Authority that any Member, Manager or any Officer of the Company does not satisfy any suitability, eligibility or other qualification criteria pursuant to any applicable Marijuana Laws with respect to any Marijuana License, including any character or suitability criteria thereunder; (b) a determination by any Marijuana Enforcement Authority that a Member, Manager or Officer must divest itself of any direct or indirect interest in, or disassociate itself from the Company or any Member, Manager, Officer or any of their respective Affiliates***; (c) the failure by any Member, Manager or Officer to promptly provide all information required or requested by any Marijuana Enforcement Authority of said***

> **Member, Manager or Officer; or (d) circumstances exist such that any Member, Manager or Officer is deemed likely, in the reasonable discretion of Manager (excluding the affected Manager), based on verifiable information received from any Marijuana Enforcement Authority or otherwise, to preclude or materially delay, impede or impair the ability of the Company or any of its Subsidiaries to obtain, retain or renew a Marijuana License, or may result in the imposition of materially burdensome terms and conditions on, or the revocation or suspension of, such a Marijuana License.** For the avoidance of doubt, the imposition of monetary fines by a Marijuana Enforcement Authority will not generally constitute a "Regulatory Problem" unless accompanied by one of the three factors set forth in the preceding sentence. [emphasis added]

44. Specifically, Eastbound failed to comply with subsection (c) of this definition by its failure to "promptly provide all information required by any Marijuana Enforcement Authority of said Member, Manager or Officer" by its failure to disclose Cliffside's interest in it to the CRC promptly upon making that investment in compliance with New Jersey law.

45. For instance, N.J.S.A. § 24:6I-7(d)(1) of the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (the "CREAMM Act") requires that "[a]n individual who secures an investment interest" in a medical cannabis dispensary "shall notify the [CRC], complete a criminal history record background check, and provide all information as may be required by the [CRC] no later than 30 days after the date the individual becomes a significantly involved person." A "significantly involved person" is defined to include "a person or entity who holds at least a five percent investment interest in … [a] medical cannabis dispensary." (N.J.S.A. § 24:6I-3).

46. This includes an ownership interest that is held indirectly. Per N.J.A.C. § 17:30-6.8(j), "[a]n ownership interest may be held directly or indirectly through an intermediary controlled by the holder, such as a shell company or holding company; the presence of such an intermediary shall not change the determination of the actual holder of the ownership interest."

47. Under the CREAMM Act, failure to comply with those provisions "shall" lead to revocation of the permit and the ineligibility of the individual or group to hold any ownership interest in a cannabis business for at least a two-year period. *See* N.J.S.A. § 24:6I-7(d)(1).

48. Eastbound represented and warranted to the Company in Section 4.02(i) of the Operating Agreement that it "will not create a Regulatory Problem." By failing to disclose Cliffside's ownership interest to the CRC by January 6, 2023, Eastbound created a Regulatory Problem in violation of Section 4.02 of the Operating Agreement.

49. Eastbound failed to cure that Regulatory Problem by "promptly tak[ing] all actions necessary or advisable to eliminate, terminate, discontinue, or otherwise cure the Regulatory Problem within ninety (90) days," which deadline passed on April 6, 2023.

**B. Breach of License Agreement**

50. Claimant incorporates all of the foregoing paragraphs by reference as if fully set forth herein.

51. In its License Agreement with Holistic, Eastbound committed to provide the Company with the "Licensed Property," defined as:

> (a) Licensor's Standard Operating Procedures as set forth in Exhibit A attached hereto and made a part hereof ("SOPs"); (b) Licensor's intellectual property related to the Licensee's business set forth on Exhibit B attached hereto and made a part hereof; and (c) all documents, designs, and marketing materials related to Licensee's operation of its business; and (d) all common law rights related the foregoing.

Ex. A.

52. However Eastbound failed to deliver any usable materials to Holistic. The SOPs provided to Holistic did not comply with New Jersey regulations and were worthless. As a result, Holistic was forced to incur at least $30,000 in legal fees to prepare compliant SOPs, an operations manual, and other materials required by the CRC to become operational.

53. In addition to Eastbound's total failure to perform under the License Agreement, Holistic is entitled to terminate under Section 7(d) of the License Agreement based on Eastbound's violation of the CREAMM Act and related New Jersey regulations, as described above.

**C. Declaratory Judgment that Eastbound Was Properly Removed from the Company**

54. Claimant incorporates all of the foregoing paragraphs by reference as if fully set forth herein.

55. Following their discovery of Eastbound's long-running non-disclosure of its true ownership, the remaining four members of Holistic voted to remove Eastbound pursuant to Section 10.02 of the Operating Agreement.

56. From December 2022 to February 2024, Eastbound continually misrepresented and concealed the truth of its ownership. Cliffside acquired its interest in Eastbound no later than December 7, 2022. Both Eastbound and Cliffside had a duty under the CREAMM Act and New Jersey regulations to report that investment to the CRC within 30 days—i.e., by no later than January 6, 2023. Instead of reporting this new owner, Mr. Jonsson lied to the CRC *twice* in December 2022 that he was the sole owner of Eastbound. Eastbound's actions compromised the Company's license, creating a "Regulatory Problem" under Section 10.02 of the Company's Operating Agreement. Yet both Eastbound and Mr. Jonsson failed to "promptly take all actions necessary or advisable to eliminate, terminate, discontinue, or otherwise cure the Regulatory Problem within ninety (90) days," which deadline passed on April 6, 2023.

57. With Eastbound having failed to remedy the resulting Regulatory Problem within 90 days, the Company's members invoked Section 10.02(c) of the Operating Agreement, which states that "the Affected Member shall be deemed to have forfeited its Units for no consideration without any action necessary on the part of the Company or the Affected Member." Accordingly, Eastbound automatically forfeited its units in the Company for no consideration.

58. To this day, Eastbound has not provided Holistic with an entity disclosure form for Cliffside, as required under New Jersey regulation.

**D. <u>Fraud, Fraudulent Scheme, Fraudulent Concealment and Fraudulent Inducement</u>**

59. Claimant incorporates all of the foregoing paragraphs by reference as if fully set forth herein.

60. Mr. Jonsson repeatedly and knowingly misrepresented to the Company and the CRC that he was Eastbound's sole owner. Indeed, Mr. Jonsson blatantly lied to the CRC in a December 7, 2022 email by falsely claiming that "[a]s it stands today Eastbound Collective LLC, the investor in Holistic, is 100% owned by me." In that same email he misleadingly

wrote that he was the source of the funds Eastbound used to invest in Holistic. Mr. Jonsson continued to actively mislead the CRC during his December 13, 2022 telephone interview with CRC investigator Genova by failing to disclose Cliffside's ownership interest in Eastbound or the use of Cliffside funds for the Holistic investment. Later, in a notarized letter from Eastbound to the Company dated January 24, 2024, Mr. Jonsson referred to himself as the "Sole Member" of Eastbound.

61. Mr. Sciarrone likewise knowingly concealed his and Cliffside's interest in Eastbound. He and Mr. Jonsson wilfully engaged in a scheme to defraud Holistic through their prolonged concealment of Cliffside's and Sciarrone's interest in Eastbound and, in turn, in Holistic.

62. Eastbound, Jonsson and Sciarrone knew and intended that Holistic would rely on these statements and material non-disclosures and that Holistic had no other way of knowing the ownership of Eastbound. Respondents' material misrepresentations and non-disclosures induced Holistic to accept Mr. Jonsson and Eastbound's (and surreptitiously Schiarrone's) investment proposal over other available investment options.

63. Holistic further relied on Eastbound, Johnson and Sciarrone's misrepresentations and material non-disclosures to its detriment, in filing an inaccurate renewal application with the CRC in January 2024 that reflected Mr. Jonsson as the sole member of Eastbound. Holistic's reliance was reasonable because, among other things, the Company believed Eastbound would not jeopardize the Company's license or its own investment in the Company. Once it learned of the misrepresentation, Holistic was required to incur significant legal costs filing an amended renewal application.

64. More troubling, Holistic remains at risk of CRC fines and other penalties—including revocation of its license—resulting from the Respondent's false disclosures and fraudulent concealment. The CREAMM Act provides stiff penalties for failure to disclose a new investment interest within thirty days, including revocation of the permit and the ineligibility of the license holders from holding any ownership interest in the New Jersey cannabis market for a period of at least two years. The CRC has not completed its investigation into Eastbound's actions and the full scope of damage that Eastbound's actions have caused Holistic remains unclear.

### E. Breach of Fiduciary Duty

65. Claimant incorporates all of the foregoing paragraphs by reference as if fully set forth herein.

66. As investors in Holistic, Respondents had a fiduciary duty to Holistic and to the Company's other Members. Through its afore-described conduct, Respondents breached that fiduciary duty.

### F. Piercing of the Corporate Veil and Liability of Individual Respondents

67. Respondents Jonsson and Schiarrone are the sole principals of Eastbound. Mr. Schiarrone is the sole principal of Cliffside. Jonsson and Schiarrone control the affairs of Eastbound. Upon information and belief, Sciarrone also controls the affairs of Cliffside.

68. Respondent's and Schiarrone used Eastbound as a corporate vehicle to perpetrate a fraud on Holistic and on the CRC.

69. Respondent and Sciarrone continue to conduct the affairs of Eastbound and are responsible for Eastbound's continued insistence on being reinstated as Members of Hollistic in violation of applicable statory and regulatory law.

70. Respondents Johnson and Sciarrone are thus individually and personally accountable and liable to Holistic their egregious misconduct and that of Eastbound as set forth herein.

## VII. RELIEF SOUGHT AND AMOUNTS CLAIMED

71. Claimants therefore respectfully request that the Arbitral Tribunal issue an award:

a. Declaring that Respondent created a Regulatory Problem under Section 4.02(i) of the Operating Agreement by failing to disclose Cliffside's ownership interest to Claimant and the CRC;

b. Declaring that Respondent Eastbound fraudulently deceived Claimant Holistic by intentionally concealing Respondent Eastbound's transfer of 70% of its equity to Cliffside, in breach of Holistic's Operating Agreement;

c. Declaring that Claimant Holistic properly removed Respondent Eastbound as a member of the Company pursuant to Section 10.02 of the Operating Agreement;

d. Declaring that Eastbound breached the License Agreement;

e. Ordering Respondents to compensate Claimant for the damages and losses suffered because of Respondents' breaches of the Operating Agreement, fraud and breaches of fiduciary and other legal obligations, including, without limitation, Claimant's legal expenses and any penalties and fines incurred by Claimant as a result of Respondent's breaches, plus interest;

f. Ordering Respondents to compensate Claimant for the damages and losses suffered because of Respondent's breaches of the License Agreement, plus interest;

g. Ordering Respondents to pay all arbitration costs, including Claimant's counsel's costs and expenses; and

h. Ordering such other relief as the tribunal deems appropriate.

## VIII. RESERVATION OF RIGHTS

72. Claimant reserves the right to modify and supplement these claims and to submit briefs, documents and other evidence in the course of these proceedings.

DATED this 24th day of September, 2024.

**Respectfully submitted on behalf of Claimant**

/s//Robert J. Donaher

Robert J. Donaher, Esq.
A.Y. STRAUSS LLC
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
(973) 582-7462
*rdonaher@aystrauss.com*
*Attorneys for Claimant Holistic Solutions LLC*